UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS KOUGH,

    Plaintiff,

    v.

TEAMSTERS LOCAL 301 PENSION
PLAN, TRUSTEES OF TEAMSTERS
LOCAL 301 PENSION PLAN, and
MICHAEL HAFFNER, PLAN
ADMINISTRATOR,

    Defendants.

No. 06 C 5235
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

Plaintiff pension fund participant challenges Defendant Fund's decision to award his disability pension beginning on September 1, 2008. The parties have filed cross motions for summary judgment. For the following reasons, Plaintiff's motion is denied, and Defendants' motion is granted.

**II. STATEMENT OF FACT**

Plaintiff Thomas Kough ("Kough") was and is a participant in the Teamsters Local 301 Pension Plan ("Plan"). He secured Social Security disability benefits in 1999 based on medical events occurring before he was covered by Defendants' Plan, and his 1999 application for a Plan disability pension was denied. In June 2005, while continuing to receive his Social Security benefits, Kough began working at R&L Trucking ("R&L") allegedly pursuant to a trial work period sanctioned by the Social Security Administration ("SSA"). R&L was party to a collective bargaining agreement requiring it to make contributions to the Teamsters Local 301 Pension

Fund ("Fund") on behalf of employees. While working under the Plan, Kough had a heart attack. He claims that subsequent open heart surgery left him with nervous system and neurological complications that precluded him from working.

On October 3, 2005, Plaintiff contacted the Fund's office regarding a disability pension. The following day, Kough submitted pay stubs from his time at R&L. Plaintiff contends that he was neither given a written application to complete, nor told what additional information he would need to submit in order to complete his application. By letter dated October 6, 2005, Plaintiff's application for a disability pension was denied. Kough appealed this decision, and the Plan Trustees denied the appeal on April 27, 2006. On September 27, 2006, Plaintiff filed his complaint in this Court challenging the Trustees' decision.

In December 2005, Plaintiff was notified that the SSA was conducting a disability review. In December, Plaintiff wrote a report to SSA claiming continuing disability. He also submitted two physical reports from early 2006 in support of his claim to SSA. On April 5, 2006, SSA said disability benefits would continue. But SSA said nothing about why disability existed or whether it was related to the 2005 injury. About the same time, in early April, the Plan argued that Plaintiff needed a paper from SSA connecting its disability finding to the 2005 injury.

In April 2007, Plaintiff knew he needed that paper. Indeed, he lost his case here on July 24, 2007, because he did not have that paper. Plaintiff did call SSA on April 3 to try to get a paper or to make a new claim to get a finding on the 2005 medical event and its relation to disability. SSA said it would not provide further information. He was already eligible for disability, so no new claim could be made. A second call two days later to SSA produced the same results; so, too, on May 22, 2007. In June 2007, Plaintiff made personal visits to SSA,

where he spoke with two different supervisors and delivered two letters drafted by his attorney. All of this changed nothing.

On July 24, 2007, this Court granted Defendants' motion for summary judgment, finding Trustee's denial of benefits was not arbitrary or capricious in light of the fact that Plaintiff had failed to submit, as required by the Plan, an SSA award connected to the condition for which he was seeking a disability pension. After filing his appeal of my ruling, Plaintiff received a report from SSA dated August 13, 2007, indicating that his disability was connected to the 2005 event. Plaintiff notes that this report was referred to in motions filed before both this court and the Court of Appeals for the Seventh Circuit, copies of which were provided to Plan attorneys. Upon learning of the SSA paper, I granted Plaintiff's motion for an order of certification pursuant to Seventh Circuit Rule 57, and requested that the Seventh Circuit remand the case for the purpose of vacating the July 24, 2007 judgment. On January 30, 2008, the appeal was remanded to this Court.

In August 2008, I remanded the matter to the Plan Trustees for a new determination of Plaintiff's application of benefits, in light of the new SSA report. On April 23, 2009, the Plan granted Kough's benefits between the period of September 1, 2008, and April 30, 2009, the day before Kough became eligible for his vested pension benefits. The Plan denied Kough benefits between October 2005 and August 2008 on the ground that August 2008 was the first time Trustees had an opportunity to consider the SSA, and therefore the earliest Kough would be eligible for a pension was September 1, 2008. Plaintiff then sought leave to file a Second Amended Complaint challenging the Plan's April 23, 2009 denial of benefits. Instead, pursuant to Federal Rule of Civil Procedure 15(d), I granted Plaintiff leave to supplement his First

3

Amended Complaint with relevant facts that occurred after the filing of the First Amended Complaint.

Plaintiff now challenges the April 23, 2009 decision as violating certain provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), and contends that he is entitled to benefits for the period between October 2005 and September 1, 2008. In his Supplemental Complaint, Plaintiff notably alleges (1) it was only in April 2007 that he first became aware that he was required to provide an SSA statement specifically connecting his disability to the 2005 injury; and (2) Defendants were aware of the August 13, 2007 SSA report no later than December 2007, when Plaintiff filed with the Seventh Circuit its Motion to Remand, and the Motion was served on Defendants' attorneys.

Plaintiff and Defendants filed cross motions for summary judgment.[1] For the following reasons, Plaintiff's motion is denied, and Defendants' motion is granted.

## III. PRELIMINARY ISSUES

Three months after submitting his October 20, 2009, motion for summary judgment, Plaintiff sought to supplement his Rule 56.1(a)(3) statement of fact to include (1) a pre-suit letter in which Defendants' counsel threatened Rule 11 sanctions in response to certain requests for information; (2) verbal statements made by Defendants' counsel that Plaintiff had a "history" with Trustees involving lawsuits going back to 1999; (3) a conversation in which Defendants' counsel explained the Trustees' prior dealings with Kough including a 1999 lawsuit against the Local, a 2000 pension claim, a 1999 discrimination claim against the Local, that Kough was "a

---

[1] I note that Defendants' Motion for Summary Judgment was submitted along with their response to Plaintiff's motion. The parties were then instructed to submit simultaneous briefing on whether the Trustees' April 23, 2009 decision was arbitrary or capricious.

4

litigious SOB," and that Defendants would seek sanctions if Plaintiff pursued his claims; and (4) statements by Defendants' counsel that he wanted to introduce evidence of the "Fund's institutional memory," including circumstances of Kough's 1999 application for disability pension and other prior filings.

Plaintiff seeks the admission of these facts in response to Defendants' November 10, 2009 Local Rule 56.1(b)(3)(c) statement of additional facts, in which Defendants explain the procedure followed by the Fund where a fund participant seeks payment of a pension. According to Defendants, a participant was only given an application form where review of his pension records demonstrated his eligibility. Plaintiff now claims that this newly claimed reliance on "pension records" raises suspicion that the Trustees were in fact basing their determination on their "institutional memory" of Kough.

Defendants move to strike these facts on two grounds. First, Defendants argue that the statements are inadmissible as they are extra-judicial lawyer-to-lawyer communications made within six months of the filing of the complaint in this case. Second, Defendant maintains that the statements are immaterial, as they were all made before this Court ruled on Plaintiff's previous motion for summary judgment.

To the extent that Plaintiff offers these facts to support his argument that the October 6, 2005 and April 27, 2006 denials were arbitrary and capricious, they are deemed stricken. I have already ruled on these denials, and the factual assertions at issue were known to Plaintiff at the time he filed his initial motion for summary judgment in this case. To the extent that Plaintiff offers these facts to demonstrate the arbitrary nature of the April 23, 2009 decision, they are immaterial. Defendants in no way suggest that the Trustees relied on "pension records" in

5

making their April 23, 2009 decision. Moreover, Plaintiff seeks to admit these statements under the theory that the Trustees are bound by the statements of their attorney. According to Plaintiff these additional factual assertions suggest that the Trustees operated in bad faith from day one, and that these statements, together with the insufficiency of the 2005 denial, demonstrate that Trustees acted arbitrarily. But these statements serve to demonstrate the intent and attitude of Defense counsel, and the intent and attitude of the Trustees' attorney is not the intent and attitude of the Trustees.[2] It is the Trustees who decide a participant's eligibility for a disability pension, not the Trustees' counsel. Therefore, Plaintiff's Second Supplemental Rule 56.1(a)(3) Statement is stricken.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[2] Plaintiff cites *Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) for the proposition that under the laws of agency, a client is bound by his attorney's acts committed within the scope of employment, and for this reason, the statements are admissible. But here, Plaintiff is not claiming that the Trustees are bound by acts of their attorneys; he is instead maintaining that the Trustees necessarily share their attorney's attitude toward the Plaintiff. Even if Trustees did have prior dealings with Plaintiff involving claims against the Local, there is nothing that suggests that such dealings resulted in the Trustees acting in bad faith. Plaintiff does suggest that there is no other way for him to demonstrate the Trustees' bad faith where, as Defendants have argued, discovery "is practically foreclosed in the ERISA context[.]" However, Plaintiff points to no particular instance where discovery requests were denied by this Court.

242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co*., 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers*, *Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

**V. STANDARD OF REVIEW**

The initial question that must be assessed in cases of this sort is the appropriate standard of review. Under ERISA, judicial review of a plan administrator's benefits determination is *de novo* unless the plan grants discretionary authority to the administrator. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the event the plan gives the administrator discretionary authority, the court reviews the decision under the arbitrary and capricious standard. *Hackett v. Xerox Corp.*, 315 F.3d 771, 773 (7th Cir. 2003). In order to determine whether the

7

administrator has discretionary authority, I look to the language of the plan. *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000).

The Seventh Circuit has suggested that employers seeking to reserve discretionary authority for the administrator of their benefits plan, include a safe harbor clause stating that "benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." *Herzberger v. Standard Insurance Co.*, 205 F.3d 327, 331 (7th Cir. 2000). In addition, the court has stated that in determining which standard of review is appropriate, "the critical question is whether the plan gives the employee adequate notice that the plan administrator is to make a judgment within the confines of pre-set standards, or if it has the latitude to shape the application, interpretation, and content of the rules in each case." *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 640 (7th Cir. 2005).

In this case, I find that the arbitrary and capricious standard applies. First, the Plan's plain language meets the standard established in *Firestone Tire* and its progeny for rebutting the presumption of *de novo* review. The Plan states that "[t]he decision [of the Trustees] on review shall be binding upon all persons dealing with the Plan or claiming any benefit hereunder, except to the extent that such decision may be determined to be arbitrary or capricious by a court having jurisdiction over such matter." I find this language is sufficient to invoke the arbitrary and capricious standard.

Plaintiff contends that de novo review is merited here because the Trustees, in their April 23, 2009 decision failed to comply with 29 C.F.R. § 2560.503-1(g)(1)(ii). This regulation requires notification of an adverse benefit determination to "set forth, in a manner calculated to be understood by the claimant . . .(r)eference to the specific plan provisions on which the

8

determination is based[.]" In the decision notification, Trustees refer to Article VI Section 6.3 of the Plan as the provision pursuant to which "a permanently disabled qualified participant is eligible for a disability pension if he is not eligible for a regular or vested pension." The letter continues: "The Trustees have the right to require a participant to be examined by a physician they designate to determine whether the participant continues to be disabled. The March 10, 2009 report concluded Mr. Kough was no longer disabled." Plaintiff maintains that the reference to Section 6.3 fails to satisfy the regulation in that: (1) it deals with the Trustees' right to require a physician examination, not with Trustees' decision regarding the commencement of benefits; (2) Section 6.3 deals with multiple topics and general reference to it is insufficient; and (3) reference to Section 6.3 addressed a description of "The Plan" and not the "Disposition." Moreover, Plaintiff argues, the letter is generally unclear.

Plaintiff's argument, however, fails to address the detailed portion of the letter with the heading "Disposition." There, Trustees explain

> the first month the Trustees had the opportunity to consider [the SSA report] was August 2008. Pension benefits are not paid retroactively where in the participants' submission to the Trustees lacks a critical qualifying document. In order to qualify for a disability pension one must submit an SSA award which established permanent disability arising while in covered employment. Nothing of that sort was submitted in support of Mr. Kough's most recent application until after the August 14, 2008 Minute Order where Judge Zagel concluded that the 2006 SSA determination constituted "newly discovered" evidence within the meaning of the Federal Rules of Civil Procedure. While not free from doubt this new evidence can arguably be read as linking Mr. Kough's continuing disability to events occurring during his 2005 covered employment. Since the earliest Mr. Kough would be eligible for a disability pension would be September 1, 2008 (the month following the month of the submission of his application supported by the "newly discovered evidence" of August 2008) [sic] and since his eligibility for the benefit ceased May 1, 2009 when he begins to receive his vested benefit,

9

> (again the amount for each benefit is identical) the potential costs to the
> Fund of further litigation, and the impact of that cost on the other
> participants and beneficiaries, exceeds the value of Mr. Kough's benefit
> from the period September 1, 2008 to April 30, 2009.

The Trustees clearly cite Section 6.3 as the portion of the plan that addresses eligibility for a disability pension,[3] and proceed to explain the significance of the SSA letter, the limitations of Section 6.3 that apply to Plaintiff's claim, and the reasoning behind their final decision. I see no need to conduct a de novo review of the Trustee's construction of the Plan, therefore I will proceed with my review employing the arbitrary and capricious standard.

Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome," (2) the decision "is based on a reasonable explanation of relevant plan documents," or (3) the administrator "has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Hess v. Hartford*, 274 F.3d 456, 461 (7th Cir. 2001) (*quoting Exbom v. Central States, Southeast and Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990)). For a decision to be deemed reasonable, a plan administrator must be found to have considered the factors that are relevant to the important aspects of the decision, and articulated an explanation that makes a rational connection between the issue, the evidence, the text and the decision made. *Cuddington v. N. Ind. Pub. Serv. Co.*, 33 F.3d 813, 817 (7th Cir. 1994).

---

[3] The fifth paragraph of Section 6.3 reads as follows:

> If the Trustees approve, the Disability Annuity Starting Date of a Participant
> eligible for a Disability Pension shall be the first day of the month next following
> the date a completed application has been submitted to the fund office.

Defendants maintain that a copy of Section 6.3 in its entirety accompanied the letter.

## VI. DISCUSSION

In support of his motion for summary judgment, Plaintiff maintains that the Trustees' April 23, 2009 decision to deny a disability pension prior to September 1, 2008 was arbitrary or capricious. First, he makes several arguments based on the assertion that the "completed application" rationale is arbitrary because Kough was never given an actual application form, but these arguments are unavailing, since it is clear that the Plan has deemed Kough's submission an application beginning in October 2005 and in no way suggested that a lack of application form resulted in a denial.[4] Plaintiff further complains that an application would have provided a checklist of required information, but even assuming this is so, Plaintiff cannot claim that he did not know an SSA was required since such requirement is articulated in the Plan.

Next, Plaintiff claims that in both the October 6, 2005 and April 27, 2006 denials the Trustees failed to comply with ERISA requirements that they "set forth the specific reasons for [a] denial, written in a manner calculated to be understood by the participant," 29 U.S.C. § 1133, and "describe any additional material or information necessary for the claimant to perfect the claim and [include] an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(1)(iii). But it is difficult to see how the October 6 and April 27 denial letters render April 23 decision arbitrary or capricious. Furthermore, I have already found that the Plan substantially complied with the applicable regulations in issuing its denial. (See Order Denying Plaintiff's Motion for Summary Judgment, July 24, 2007, Docket Entry #64).

---

[4] Furthermore, the fact that Kough was not given an actual application form is consistent with the procedure described by the Fund that a participant is not given an application until after he is deemed eligible for the requested pension.

Third, Plaintiff maintains that the first clause of Section 6.3, which establishes eligibility requirements, makes no mention of a completed application requirement, and to the extent that the Plan is arguing that Section 6.3's fourth clause controls, the decision did not cite that language. However, it is unclear why Plaintiff limits his reading of Section 6.3 to its first clause. In the April 23 letter, the Trustees cite Section 6.3 as a whole as applicable in this instance, and later explain the eligibility date of September 1, 2008 as "the month following the month of the submission of his application supported by the 'newly discovered evidence' of August 2008." The language employed by the Trustees is substantially similar to that included in Section 6.3.

Next, Plaintiff argues that retroactive payment of benefits is not prohibited by the Plan, and that it is, in fact, expressly provided for. Plaintiff cites Section 6.9(h), which states that "[p]ayment of benefits shall include retroactive payments for any months for which a pension is due and payable." According to Plaintiff, the Trustees ignored the question of when a pension becomes "due and payable," and any explanation offered now would be a post hoc rationalization. But this argument too is unavailing. The April 23, 2009 letter clearly explains why Plaintiff became eligible for his pension on September 1, 2009 - this was the date his pension was due and payable. Although Trustees did not use those exact words, it is difficult to interpret their explanation in another way.[5] Moreover, Section 6.3 itself specifically addresses when benefit payments begin and when they may be paid retroactively. For these reasons, it is reasonable that the Trustees did not explicitly use the phrase "due and payable."

---

[5] Also worth noting is that it appears Section 6.9 addresses retirement benefits, not disability benefits, and therefore would not apply to disability benefits.

12

In a related argument, Plaintiff maintains that there is nothing in the Plan that prohibits pension benefits from being paid retroactively, or ties the payment of such benefits to the submission of "a critical qualifying document." According to Plaintiff, the Fund has arbitrarily added this new criterion to the Plan. But this Court has found Kough's initial failure to submit a Social Security award in connection with his 2005 condition to be a failure to comply with plan criteria, and that the Plan was justified in denying his application on that basis. (See Order Denying Plaintiff's Motion for Summary Judgment, July 24, 2007, Docket Entry #64). The Social Security award paper was crucial and Kough's efforts to obtain it demonstrate his knowledge of this fact. Section 6.3 clearly states that if an applicant is found to be eligible by the Trustee (and eligibility here requires the submission of a Social Security award certificate), the annuity starting date is "the first date of the month next following the date a completed application has been submitted to the fund office." No new criterion has been imposed on Plaintiff.

Finally, Plaintiff maintains that notice to the Plan's attorneys of the SSA award was notice to the Trustees, and such notice should satisfy the completed application requirement. In other words, Plaintiff is entitled to benefits from November 15, 2007,[6] the time Trustees (through their attorneys) were in possession of the necessary SSA paper filed as part of Plaintiff's motion to vacate. However, on February 8, 2008, I denied Plaintiff's motion for relief from judgment on the ground that Plaintiff failed to establish the requisite due diligence with regard to the SSA paper. The judgment entered for Defendant stood undisturbed until August 14, 2008, the date I

---

[6] On November 15, 2007, Plaintiff submitted his motion to vacate judgment. However, this motion was subsequently withdrawn, and others filed. Defendants maintain that they had notice as of February 8, 2008, the date the Court ruled on the most recently filed motion to vacate.

remanded Kough's application, after Plaintiff made a showing of his efforts to obtain the SSA paper. It was at that time that Trustees could consider the submission of the SSA document, and they did. Trustees deemed the application completed in August 2008, the time of the remand.[7] Plaintiff points to no legal duty under ERISA that the Trustees, sua sponte, consider the SSA award while his appeal and motion for remand were pending, nor does Plaintiff suggest that he asked them to do so.[8] Plaintiff has not shown this course of conduct to be arbitrary or capricious.

**VII. CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: April 6, 2010

---

[7] I note here that the Trustees deemed the application complete and submitted as of the date of this Court's remand, and not as of September 16, 2008, the date that Kough's completed application was actually submitted to the Trustee's for review.

[8] This is a purely legal argument, not a moral one.