UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS KOUGH,

    Plaintiff,

    v.

TEAMSTERS' LOCAL 301 PENSION
PLAN, TRUSTEES OF LOCAL 301
PENSION PLAN, and MICHAEL
HAFNER, PLAN ADMINISTRATOR,

    Defendants.

No. 06 CV 5235
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

    This order incorporates by reference the order of the Court of Appeals dated August 18, 2011. Relevant here, that order remanded the case to me with instructions to further remand the matter to the Trustees of Teamsters Local 301 Pension Plan (the "Plan") so that it might consider anew whether Kough was entitled to disability benefits. The Plan has since denied the benefits. Before me now are cross motions for summary judgment regarding a final determination of pension plan benefits. For the reasons to follow, Plaintiff's motion is denied and Defendants' is granted.

**II. DISCUSSION**

    The requirement that the Plan make a *de novo* interpretation is a sanction for the failure of the Plan to comply with Department of Labor ("DOL") regulations that govern notice of adverse benefit determinations. The Plan's letter of denial did not recite the specific reason(s) for denial or identify the specific plan provisions on which the denial is based. Additionally, it failed to

inform the recipient of what additional information might be necessary to perfect the claim (including a statement of why the information is necessary). Further, it lacked a description of review procedures, time limits including the right to sue in court or the existence (and copies). Finally, it lacked citation to and explanation of any internal rule or criteria that were relied upon in the decision to deny benefits.

All the denial letter said in justification was "due to the fact that you have not become permanently disabled while employed in covered service." It did not mention - as it should have - that his claim required evidence from the Social Security Administration ("SSA") concerning his disability. The SSA determinations were critical and should have been highlighted.

As the Court of Appeals noted, the claim may have appeared futile to the Plan because Kough previously sought and failed to get benefits. The basis for the previous failure was that he did not become disabled while employed in covered service, rather, he had been disabled ever since the 1998 determination. The Plan's denial of the 1998 claim is not contested. Regardless, though, the Plan still had a duty to comply with the DOL regulations. So the Court of Appeals concluded that the "appropriate remedy" for the Plan's procedural violation was not an award of benefits but rather a remand to the "plan administrator for a de novo benefits determination."

One oddity about the case is that the Plan did, in fact award disability benefits for an eight-month period running from September 1, 2008 through April 30, 2009. The Plan's explanation for this decision was not that disability benefits were legally required but rather that, under all circumstances of this case, it would be wiser to pay a short stretch of benefits in the hope that it would end the very protracted litigation (and its costs). That hope was not vindicated

and the litigation has continued, adding to the substantial costs borne by both Kough and the Plan. I accepted this explanation, and so did the Court of Appeals. Whatever the explanation, the Court of Appeals decided that Kough would remain entitled to the benefits that the Plan awarded for the eight months, but noted that the Plan is not legally bound by its award of those benefits in deciding whether similar benefits should be paid for October 2005 through August 2008.

In its remand to this Court, the Court of Appeals observed that it was "not persuaded that *de novo* review [of the question of disability by the Seventh Circuit] is required." While this observation is not binding upon me, I agree that judicial *de novo* review was and is unnecessary. The hallmarks of bias and arbitrariness are missing here. There was neither inconsistency nor strained reasoning to deny the claim. In an excess of caution, two prior participants in the Plan's prior determination recused themselves from the one which is before me now. I therefore apply the arbitrary and capricious standard to the instant cross motions.[1]

The basic fact pattern is this. Kough was disabled in 1998 at a time when he was not working for a unionized employer. Kough applied for Social Security benefits and the SSA determined him to be totally disabled in June 1999. In 2005, he decided to go back to work despite his disability benefits. He got a job with a unionized employer, the work lasting about four months. During that period he suffered a heart attack, underwent open heart surgery and

---

[1] At the status hearing announcing my opinion in this case, held on April 16, 2012, I may have misspoken and stated something to the effect that the "arbitrary and capricious" standard did not apply. What I had intended to state was that arbitrary and capricious was the proper standard, but that the Plan's decision survived that level of review. I regret any confusion resulting from this misstatement.

then stopped work. The surgery was successful as to the heart problem, but there were complications related to the surgery that Kough claims disabled him anew. The work was covered work and, I assume for purposes of this decision, the complications stemming from his surgery might be grounds for disability benefits absent a prior disability. The Plan took the view that he became disabled permanently in 1998. He may have become less healthy in 2005 but did not become more disabled as a result of the heart attack.[2]

The Plan did not dispute Kough's disability; it merely decided that his disability (which would justify benefits) originally arose from non-covered work. It was well within reason for it to do so. It based its decision on the evidence that SSA found Kough to be totally and permanently disabled beginning in December 1998 supplemented by additional communications from medical professionals. Those letters were reasonably read to identify the source of disability as the earlier injuries. I do not conclude that the letters rule out any chance that the heart attack and surgery were causes of disability, but the Plan was within its rights to decide that what happened in the 1998 uncovered employment disabled Kough. An orthopedic examination more than half a year prior to the heart problem found Kough to be totally and permanently disabled due to the degenerative arthritis and disc problems in his back. This conclusion was shared by other physicians after the heart surgery. SSA issued a post heart attack report and mentioned the heart problems; it did not determine that Kough was rendered disabled because of the heart problem and its sequelae, it was not asked to do so. It did determine that disability continued but did not find that what happened in 2005 was the reason for disability in whole or in

---

[2] There is a motion to strike certain declarations offered by Defendant. I do not rule on this question because defendants have withdrawn the declaration.

part. One could read the SSA continuing eligibility letter as affirming that permanent disability was caused in 1998 and all the later problems did was to add more elements to aggravate the previously acquired disability.

It is true that the SSA letter of September 2008 stated that Kough had a disability tied to his June 2005 surgery. It is largely this letter that Kough points to as evidence of his eligibility for benefits. It is also true that the Plan's October 2011 decision on remand could have done a better job of explaining why that letter was not given significant weight. But the Plan did lay out how Kough had been disabled in 1998 and had been confirmed by SSA to still be disabled from that incident as late as 2003. Importantly, they also noted that Kough never submitted any evidence on his behalf showing that he had recovered from the 1998 disability prior to the new disability of 2005. It is clear that it would have taken evidence of recuperation for them to be moved by any disability stemming from the June 2005 surgery. The Plan could have (and, given the history of this case, probably should have) done more to explain why they were unpersuaded by the September 2008 letter. Nevertheless, their reasoning is clear enough and certainly was not arbitrary or capricious.

It is, in fact, difficult to draw a conclusion from the physicians' letters (the ones on which the SSA's September 2008 letter exclusively relied) that they drew a conclusion that the heart attack surgery's complications were disabling. The Plan was entitled to draw its own conclusions and it did so in light of the medical opinions it received; perhaps not a foregone conclusion but one well within the range of acceptability.

In *Fischer v. Liberty Life Assurance,* 576 F.3d 369 (7th Cir. 2009), the Court of Appeals clearly stated it might well have reached a conclusion quite the opposite of the Plan's result but it deferred to the rule which allows such results only when the Plan has been arbitrary and capricious. In this case, the Plan came nowhere near the line approached in *Liberty Life Assurance;* it acted well within the bounds of the law.

The Plan did not overstep its bounds, acted within reason, and I find no reason to overturn its conclusion.[3]

The Court of Appeals did note that the Supreme Court of the United States had changed the rules for awarding attorney fees. I now have discretion to award costs and fees so long as a party has achieved some degree of success. The Court of Appeals notes that the award of eight months of disability benefits is some success, a point difficult to dispute. To decide whether to award costs and fees there are five factors I must consider which the Court of Appeals delineates and which counsel have read. The plaintiff is entitled to file a petition for award of costs and fees and should follow the local rule procedures governing such claims. Such a petition, if it is to be

---

[3]The briefing by Plaintiff contains a disproportionate amount of quibbles over documents and insignificant procedures. The arguments are peppered with questions suitable for cross-examination, but the job of counsel in these cases is to propose answers not questions. It does no credit to Kough's lawyers that they argue as if the Court of Appeals had never held that the Plan is not bound by its decision to give eight months of what it believed to be undeserved benefits in the hope it would end the expense to the Plan which has its own duties to husband it funds for those who are eligible for benefits. The tone of the plaintiff's briefing was accusatory where the record did not support accusation. Many of the problems in this case can be laid at the door of Social Security. The claim for benefits was not so strongly supported that Plaintiff was justified in adopting a tone suggesting that the Plan was essentially dishonest in its decisions rather than mistaken. Obviously tone and quibbles and the like do not dictate outcomes in non-jury proceedings, but they are ineffective and waste the court's time and the client's money.

filed, must be filed within six weeks of the date of this opinion and I will thereafter schedule briefing.

### III. CONCLUSION

Summary judgment is granted for Defendants and denied for Plaintiff. The parties shall address the remaining issue of attorneys' fees in accordance with this opinion.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: April 19, 2012